UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| NATURESTAR GLOBAL LLC and NATURESTAR NORTH AMERICA LLC,<br><br>Plaintiffs,<br><br>v.<br><br>URTHPACT INNOVATIONS, LLC,<br><br>Defendant. | Civil Action No. _____ |

## COMPLAINT

Plaintiffs NatureStar Global LLC and NatureStar North America LLC (together, "Plaintiffs" or "NatureStar") hereby submit this Complaint and bring claims for breach of contract, violations of Massachusetts General Laws Chapter 93A, and gross negligence based on the actions of the Defendant, UrthPact Innovations, LLC's ("UrthPact"), including its conscious indifference to the harm it caused Plaintiffs.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. 1332(a). The amount in controversy exceeds $75,000. Plaintiffs are Minnesota limited liability companies, headquartered in Minnesota, and have no members that reside in the state of Massachusetts. On information and belief, Defendant is a Massachusetts limited liability company, headquartered in Massachusetts.

2. Venue in the District of Massachusetts is proper under 28 U.S.C. Section 1391(b)(1), (2). Defendant UrthPact has its headquarters in Massachusetts and a substantial part of the events or omissions giving rise to the claims occurred in Massachusetts.

**PARTIES**

3. Plaintiffs NatureStar Global LLC and NatureStar North America are Minnesota limited liability companies with their principal place of business at 7450 Fielding Trail, Minnetrista, MN 55359.

4. On information and belief, Defendant UrthPact is a Massachusetts limited liability company with its principal place of business located within the District of Massachusetts at 42 Jungle Road, Leominster, MA 01453.

**FACTS**

5. Plaintiffs and Defendant entered into two separate contracts to manufacture compostable straws.

6. The first contract, signed on June 13, 2023 (attached as <u>Exhibit A</u>), was between NatureStar Global LLC and UrthPact, wherein NatureStar Global supplied UrthPact with a compostable polymer necessary for UrthPact to manufacture the compostable straws.

7. The second contract, signed on June 14, 2023 (attached as <u>Exhibit B</u>), was between NatureStar North America LLC and UrthPact, wherein NatureStar North America was a customer being supplied with the compostable straws that UrthPact agreed to manufacture at its Massachusetts-based plant.

8. During the negotiation of the above contracts, NatureStar disclosed to UrthPact that it had a buyer for the compostable straws willing to pay $3 million for timely delivery of the product.

9. UrthPact requested that it be able to review the contract with NatureStar's buyer—Hoffmaster Group Inc.—and NatureStar agreed to provide a copy of that contract (attached as <u>Exhibit C</u>).

10. The version of the Hoffmaster contract shared with UrthPact showed in Section 3(a) that Hoffmaster could be "relieved of its purchase guarantees" in the event that NatureStar was "failing to meet its delivery requirements" for a "period of more than 30 days."

11. UrthPact understood the importance of being able to manufacture the compostable straws in a timely fashion.

12. UrthPact also had NatureStar and Hoffmaster tour its Massachusetts factory, showing the parties how the straws would be manufactured and proving that it had the infrastructure necessary to fulfil the orders that Hoffmaster would make.

13. Unbeknownst to NatureStar and Hoffmaster, UrthPact had plans to set up another straw factory in California.

14. UrthPact did not have functioning, properly-calibrated machines in California, but decided to use those machines to supply the straws despite having shown NatureStar and Hoffmaster the straw machines in its Massachusetts factory.

15. As a result, Hoffmaster did not receive the straws it ordered in a timely fashion and invoked provision 3(a) in its contract to void the $3 million purchase guarantee.

16. Leading up to Hoffmaster's withdrawal of the purchase guarantee, Plaintiffs were deceived by UrthPact in myriad ways, including the following:

17. UrthPact deceived Plaintiffs about its ability to deliver the straws on time;

18. UrthPact deceived Plaintiffs about its ability to deliver the straws from new machines on the west coast;

19. UrthPact deceived Plaintiffs about its ability to calibrate new machines fast enough to produce enough straws;

20. UrthPact deceived Plaintiffs about the location of the production lines, specifically, moving production from the east to the west coast;

21. UrthPact deceived Plaintiffs about the adequacy of redundancies in the production lines between the Massachusetts and California lines;

22. UrthPact deceived Plaintiffs about its ability to produce enough straws on the east coast;

23. UrthPact deceived Plaintiffs about the amount of equipment and resources it would put toward making the necessary straws;

24. UrthPact deceived Plaintiffs about starting production of straws post receipt of purchase orders;

25. UrthPact deceived Plaintiffs about whether production of straws started on Wednesday, June 14, 2023;

26. UrthPact deceived Plaintiffs about the amount of time required to fulfill the orders from Hoffmaster; and

27. UrthPact deceived Plaintiffs by not disclosing its business reasons for moving production lines at the last minute.

28. Furthermore, UrthPact, because of its knowledge of the Hoffmaster contract, knew the harm that it would cause Plaintiffs to be late on its deliveries and with conscious indifference decided to base its supply of the required compostable straws only from its new, untested California factory.

## CAUSES OF ACTION

### I.     BREACH OF CONTRACT

29. Plaintiffs incorporate paragraphs 1-28 above as if fully stated herein.

30. Plaintiffs and Defendant signed two valid contracts.

31. Defendant breached the contracts by failing to timely deliver products based on accepted purchase orders.

32. Plaintiffs did not materially breach the contracts.

33. Plaintiffs were damaged by Defendants' breach in the amount of at least $3 million.

## II.  MASSACHUSETTS 93A VIOLATIONS

34. Plaintiffs incorporate paragraphs 1-33 above as if fully stated herein.

35. Defendant engaged in multiple deceptive acts as described above, in violation of Mass. Gen. Laws., c. 93A, § 11.

36. Defendant's deceptive acts caused the Plaintiff losses of at least $3 million.

37. Plaintiffs sent a demand letter in accordance with Chapter 93A to Defendant, a copy of which is attached hereto as Exhibit D.

## III.  GROSS NEGLIGENCE

38. Plaintiff incorporates paragraphs 1-37 above as if fully stated herein.

39. Defendant owed a duty of care to Plaintiffs based on their contractual relationship.

40. Defendant breached that duty of care by, with conscious indifference, engaging in actions it knew would harm Plaintiffs.

41. Defendant's actions caused the harm to Plaintiffs.

42. Plaintiffs were harmed by Defendants' actions in the form of an economic loss of at least $3 million.

## PRAYER

WHEREFORE, Plaintiffs respectfully request that this Court:

(A) Enter judgment against Defendant and in favor of Plaintiffs for each cause of action alleged herein;

(B) Award Plaintiffs damages in the amount to which it is entitled under Massachusetts General Law 93A; and

(C)     Award Plaintiffs attorneys' fees and costs.

          Respectfully submitted

          NATURESTAR GLOBAL LLC and
          NATURESTAR NORTH AMERICA LLC

          By their attorney,

          */s/ Joshua A. McGuire*
          Joshua A. McGuire (BBO #651877)
          jmguire@sassooncymrot.com
          SASSOON CYMROT LAW, LLC
          189 Wells Avenue, Suite 200
          Newton, MA  02459
          (617) 720-0099

Dated: October 17, 2025

Sean M. Whyte (*pro hac vice forthcoming*)
BRESSLER, AMERY & ROSS, P.C.
325 Columbia Turnpike, Suite 301
Florham Park, New Jersey 07932
Telephone: (973) 660-4463
Facsimile: (973) 514-1660
Email: swhyte@bressler.com